800 So.2d 36 (2001)
John F. ALES
v.
S. Scott SEWELL, H. Dillon Murchison and Petro-Marine Underwriters, Inc.
John F. Ales
v.
S. Scott Sewell, H. Dillon Murchison and Delta Energy Management, Inc.
Nos. 2000-CA-2017, 2000-CA-2018.
Court of Appeal of Louisiana, Fourth Circuit.
October 17, 2001.
*38 Paul J. Mirabile, Middleberg, Riddle & Gianna, New Orleans, LA, Counsel for Plaintiff/Appellee.
Malcolm R. Petal and W. Patrick Klotz, Collins-Klotz Law Firm, New Orleans, LA, Counsel for Defendants/Appellants.
Court composed of Judges MIRIAM G. WALTZER, PATRICIA RIVET MURRAY and MAX N. TOBIAS, JR.
MIRIAM G. WALTZER, Judge.

STATEMENT OF THE CASE
Plaintiff, John F. Ales, filed suit on 26 July 1999 against S. Scott Sewell, H. Dillon Murchison and Petro-Marine Underwriters, Inc. (hereinafter "Petro") pursuant to LSA-R.S. 12:103(D) for a writ of mandamus to require defendants to allow Ales to inspect Petro's records and accounts. Ales also sought reimbursement of his litigation costs and expenses and attorneys' fees.
In a companion case, Ales sued Delta Energy Management, Inc. (hereinafter "Delta"), Sewell and Murchison seeking the same relief with respect to Delta.
The matters proceeded in a summary manner. On 24 August 1999, defendants in the Delta case filed a peremptory exception of no right of action, answer and *39 reconventional demand alleging bad faith of Ales and his attorneys and seeking attorneys fees, costs and sanctions.
On 31 August 1999 by joint motion of counsel for the parties, the trial court transferred the Delta case to the division of the trial court in which the Petro case was pending and consolidated it with the Petro case. On 3 September 1999 Ales filed an answer to the reconventional demand in the Delta case.
On 16 September 1999 the trial court entered judgment granting Ales' motion to compel discovery and denying defendants' motions to quash the deposition subpoena and discovery requests and requiring defendants to respond to Ales' discovery requests.
The Delta record contains a copy of a writ of mandamus dated 9 August 1999 and filed into the record on 27 September 1999 directing Delta to allow Ales and/or his agents or attorneys to exercise fully Ales' rights under LSA-R.S. 12:103(D) immediately. Attached to the writ is a document showing personal service on 24 August 1999 on Ales.
On 18 February 2000, Petro filed its answer and peremptory exceptions of no right of action and of no cause of action.
The consolidated cases were tried on 23 and 24 February 2000, and, after having received post-trial briefs, the trial court rendered judgment in favor of Ales on 28 April 2000. The trial court ordered that defendants permit examination of Delta's and Petro's original records and accounts as specified in Ales' Exhibit P-28, subject to the following limitations:
(1) Ales shall not use or disclose the information to compete in any way with defendants or their customers;
(2) Ales shall be bound by the existing confidentiality agreements entered into between the corporate defendants and their clients; and
(3) Corporate customers' geological study data, plans for development and financial statements are exempt from disclosure.
The trial judge awarded Ales $25,000 for attorneys fees and costs, plus costs of the proceedings and legal interest from the date of judgment. Defendants' exceptions and reconventional demand were dismissed with prejudice.
From that judgment, defendants appeal.

STATEMENT OF FACTS
The trial judge filed detailed reasons for judgment, including specific findings of fact.
The court noted that defendants' position concerning Ales' shareholder status was inconsistent. Defendants' pleadings deny Ales was a shareholder; however, at trial, defendants conceded that Ales was a Delta shareholder. Under identical facts, defendants denied he was a Petro shareholder. As to both corporations, defendants alleged Ales had failed to give consideration for his stock; however, the corporations apparently allowed him to exercise the rights of a shareholder of record when they supplied some documents to Ales in response to his initial request.
The trial court found as a matter of fact that numerous records of both corporations, including corporate submissions to the Internal Revenue Service, reflected that Ales was a shareholder since the inception of the corporations. This conclusion is amply supported by the evidence of record. Ales produced a copy of Petro's Form 2553, Election by a Small Business Corporation under section 1962 of the Internal Revenue Code (Sub-Chapter S status election) in which the corporation names Ales as owner of 1600 shares, acquired *40 on 1 August 1994. Ales also appears as a Petro shareholder in a Notice of Special Shareholders Meeting dated 6 January 1997. On 8 April 1998, Petro sent Ales "your Schedule K-1 (Form 1120S) Shareholder's Share of Income, Credits, Deductions, etc. This information reflects the amounts you need in order to complete your income tax return." A similar letter dated 7 April 1998 from Delta to Ales encloses Ales' 1997 Schedule K-1 (Form 1120S) Shareholder's Share of Income, Credits, Deductions, etc. relating to Delta. Ales also submitted as evidence Petro's Schedule K 1 (Form 1120S) directed to Ales for 1998. Indeed, the confidentiality agreement prepared by Petro for Ales' signature refers to him as owner of five percent or more of Petro's issued and outstanding shares. The court found that only the corporate president's ministerial task of signing a stock certificate stood between Ales and delivery of a Petro stock certificate.
In April, 1995, Delta sent Ales a shareholders' list showing his ownership of 1600 shares and requesting Ales' signature. On 23 January 1998, Delta sent Ales a FAX addressed "TO THE FOLLOWING SHAREHOLDERS OF DELTA ENERGY MANAGEMENT, INC.: John F. Ales..." together with a notice of a Special Shareholders' Meeting. This document was signed by defendant Murchison. On 23 January 1998, Murchison signed a certification of Delta's "Shareholders of record" [emphasis added] that included the following: "Ales, John F." as owner of 1800 shares of voting common stock in Delta. The minutes of Delta's Special Meeting of Shareholders held on 26 January 1998 states, "Shareholder Ales was absent."
The trial court noted that the corporate records reflecting paid-in capital refute defendants' claim that while other shareholders paid cash for their shares, Ales did not. The trial court rejected Sewell's unsupported testimony that Ales was not a shareholder. Exhibits P-24 and P-25, and Sewell's letter of 6 July 1999 show that defendants initially acknowledged Ales' shareholder status. Furthermore, plaintiff introduced copies of the Delta and Petro share registers provided by Malcolm R. Petal, counsel for Petro and Delta, to counsel for Ales showing Ales as the owner of 1700 shares of Delta, represented by Certificate # 7 issued 22 December 1997. The Petro share register, which we note is not dated, signed or otherwise authenticated by a corporate officer, shows Ales' name, aligned with Certificate # 6, but the columns showing date issued and number of shares are blank.
The trial court found that Ales is not a "business competitor" of the defendant corporations. The trial judge found that Delta and Petro are engaged in a specialized business related to providing bonds for "plugging and abandonment" projects. According to Delta's own verified pleadings, there is only one other company engaged in that business. There is no evidence of record tending to show any affiliation between that company and Ales. The court found that although Sewell verified the allegations contained in defendants' pleadings, those allegations were not correct.
Although Sewell verified that Ales held a Louisiana insurance agent's license, a toll-free call to the Louisiana Department of Insurance would have shown defendants that this claim was untrue.
The court found that although defendants allege that they provided Ales all of the non-proprietary and non-confidential documents requested, Sewell admitted in his sworn testimony that there were non-confidential documents he had not provided. The trial court made a specific examination of each document to determine *41 which were proper subjects of Ales' inspection request.
Defendants contend that disclosure to Ales of documents received from their customers in confidence would constitute a breach of confidentiality agreements between the defendants and the customers. However, the trial court noted that disclosure to a shareholder, such as Ales, is not a breach of that confidence. The defendants' confidentiality agreement with their customers contains a provision which binds defendants' principals, including shareholders, to confidentiality. The trial court inferred from this provision that the defendants' customers must understand from this agreement that their confidential information will be available to the corporations' shareholders. Since Ales owns approximately 20% of the outstanding stock of each corporation, the trial court simply ordered that he would be bound by and must comply with the customer/corporation confidentiality agreements.
R. Patrick Sharp, III, a licensed and practicing Certified Public Accountant, testified that he was engaged to act on Ales' behalf with respect to Ales' inspection of the corporate records, specifically to assist in analyzing and interpreting the corporate financial records. In that connection, he prepared Exhibit P-28, a document directed to Petro, and a similar document directed to Delta, requesting specific documents. The requested documents included: corporate charter, articles of incorporation, by-laws, stock register, minutes of shareholder meetings and minutes of board of directors meetings. The request also included the following information for each fiscal year since the respective corporation's inception: books and accounting records consisting of general ledgers, cash receipts and disbursements journals, monthly financial statements, check books or stubs, cancelled checks and bank statements, invoices to customers, invoices supporting disbursements, Federal and Louisiana Income Tax returns, payroll tax returns, IRS Forms 1099 received and submitted, and supported expense reports. Supporting documentation was requested for debt, contracts and documents relating to bond and reinsurance underwriters or carriers, agency or broker agreements, commission agreements, overriding royalty interests, listing of applications for bonds submitted, support for compensation paid all employees, and information concerning litigation (actual or threatened) and asserted or unasserted claims against or on behalf of the corporations. According to Sharp, the corporations failed to provide the following requested documents: stock register, shareholder meeting minutes, directors meeting minutes, check books or stubs, invoices to customers, payroll tax returns, IRS Forms 1099 received and submitted, supporting documentation for debt, contracts and documents relating to underwriters, carriers, agency or broker agreements, commission agreements, and overriding royalty interests; documentation regarding business activities, support for compensation paid to employees and pending claims and litigation. Sharp testified that all of this information was needed in order that he might make a meaningful financial analysis for his client. The court ordered production of all requested documentation, subject to the following limitations:
1. Corporate customers' geological study data, their plans for development and their financial statements are not to be produced;
2. Ales shall not use or disclose information to compete in any way with the defendants or any of defendants' customers;
*42 3. Ales shall be bound by the confidentiality agreements entered into between the corporate defendants and their customers as currently existing; and
4. Nothing in the judgment limits Ales' right to use the information for the purpose of vindicating his rights as a shareholder.
The trial court also found that defendants' refusal to permit inspection of the documents was in bad faith, authorizing an award of attorneys fees under LSA-R.S. 12:172(D). The court found that all the defenses were demonstrated to be not only incorrect, but also to be without a reasonable factual basis. The court specifically found that the defenses were unsupported by any documentation. Our review of the record leads us to agree with this finding of fact. The trial judge also concluded that defendants undertook a campaign, after Ales' request for inspection, to somehow contradict the corporations' records and declare that Ales was not a Petro shareholder.
As the trial judge noted in her reasons for judgment, Ales' counsel testified without cross-examination or contradictory evidence concerning his substantial work to vindicate Ales' rights. The court found further that most of the work was necessitated by defendants' bad faith and obstruction. The trial court reviewed the attorney's bills and found them to be reasonable.

BURDEN OF PROOF
Generally, the plaintiff bears the burden of proving the elements of his case by a simple preponderance of the evidence. In this case, those elements include proper written demand by an authorized shareholder to examine and/or make extracts from the corporate records; bad faith refusal by the corporation, its officer or agent to permit the exercise of those rights; and proof of costs and expenses, including attorney fees, of any proceeding to enforce such inspection and any actual damages caused by the bad faith refusal. Thornton ex rel. Laneco Const. Systems, Inc. v. Lanehart, 97-2870 pp. 5-6 (La.App. 1 Cir. 12/28/98), 723 So.2d 1113, 1116, quoting Directional Wireline Services, Inc. v. Tillett, 552 So.2d 1201 (La.App. 1 Cir. 1989).
The burden of proving that a shareholder possessed ill motive is on the corporation seeking to deny the shareholder's right to inspect the records. Naquin v. Air Engineered Systems and Services, Inc., 463 So.2d 992 (La.App. 3 Cir.1985). By analogy, the corporation also has the burden of proving any statutory defense, such as the shareholder's status as a business competitor, or the confidentiality of the requested documents.

STANDARD OF REVIEW
It is well settled that a court of appeal may not set aside a trial court's or a jury's finding of fact in the absence of "manifest error" or unless it is "clearly wrong", and where there is a conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed on review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. Where there are two permissible views of the evidence, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong. When findings are based on determinations regarding the credibility of witnesses, the manifest errorclearly wrong standard demands great deference to the trier of fact's findings. Where a factfinder's finding is based on its decision to credit the testimony of one or more witnesses, that finding can virtually never be manifestly erroneous or *43 clearly wrong. Rosell v. ESCO, 549 So.2d 840, 844-845 (La.1989).
FIRST ASSIGNMENT OF ERROR: The trial court erred in ordering the production of confidential client records, which are beyond the scope of LSA-R.S. 12:103's required shareholder disclosures.
In oral argument of this appeal, counsel for the defendants appeared to concede that the scope of production ordered by the trial court was correct. However, in light of the shifting positions taken by defendants during the conduct of this case, and the resultant problematical nature of reliance on statements of defendants' positions, we will address this assignment of error.
Upon at least five days' written notice any shareholder, except a business competitor, who is and has been the holder of record of at least five percent of the outstanding shares of any class of a corporation for at least six months shall have the right to examine, in person or by agent or attorney, at any reasonable time, for any proper and reasonable purpose, any and all of the records and accounts of the corporation and to make extracts therefrom. LSA-R.S. 12:103 D(1)(a)
Nothing contained in this Subsection shall impair the power of the court to deny the right of inspection as to confidential matters. LSA-R.S. 12:103 D(3)(a)
Our review of the record and of the judgment of the trial court convinces us that this assignment of error is without merit. The scope of the minority shareholder's inspection right under the statute is wide-reaching: "any and all of the records and accounts of the corporation." Among the documents found to be within this scope are the general ledger; cash journal of all receipts and deposits; cash journal of all disbursements showing the individual or corporation to whom funds were disbursed and the amount of disbursement; each unaudited quarterly financial statement of the corporation reflecting revenues, their sources, and expenses; audited financial statements; records of all proceedings of shareholders, directors and committees of the board including minutes, share register book, and all corporate records; and State and Federal tax returns. See, Matherne v. Heffron, 496 So.2d 446, 448 (La.App. 1 Cir. 1986). According to that opinion, the intent of the statute did not extend under the facts of that case, to require inspection of every original invoice, deposit slip or cancelled check.
We note CPA Sharp's testimony that the defendants failed to provide the records he needed in order to provide his client with a financial analysis of the companies, including items provided in Matherne such as minutes and corporate records. Furthermore, the CPA testified that parts of line entries in the accounting records that were provided by defendants had been "blacked out" and that those omissions adversely affected his ability to perform his financial analysis. He also testified that the numbers appearing on the balance sheet and income statement provided by the company did not agree with corresponding items on the tax returns. The CPA was also perplexed by the corporations' apparent payment of an IRS garnishment in the name of defendant Murchison. With respect to these issues, to unclear inter-company transactions and to the "blacked out" items, the CPA testified that he had insufficient information to reach reasonable conclusions.
Defendants in brief limit the objectionable documents to only the following, and, while we note that the testimony clearly shows that defendants failed to supply *44 unexpurgated copies of documents not identified on appeal as objectionable, we shall address only those documents so identified:
1. Names and addresses of clients and potential clients;
2. Bonds procured for each client;
3. Underwriter to whom submitted;
4. Amount of each bond;
5. Name and location of properties involved;
6. Amount of commission and/or override received by corporations;
7. Bond and reinsurance contracts;
8. Agency and Broker agreements; and
9. Overriding royalty interests, properties, assignments and division orders.
Defendants contend that the first six items are subject to confidentiality agreements entered into between the corporations and their clients. An unsigned copy of the customer/company confidentiality agreement and limited release was admitted into evidence as part of Plaintiff's Exhibit # 35 and provides:
This limited release and confidentiality must be signed on behalf of your company [by] an officer with the authority to do so. It will be sent to any surety requesting verification that you have consented to the release of credit or reference information. Delta Energy Management, Inc., on behalf of itself and its affiliates and their respective officers, directors, principals and employees, hereby agrees [sic] to maintain such information in strict confidentiality, not to use it to compete with the company in any way. The undersigned hereby grants permission to any individual, company or organization to release credit and/or reference information to Delta Energy Management, Inc. in order to consider our company and/or its owners for participation in Delta Energy's lease abandonment and bonding programs, including the Delta Program [copyright].
Another confidentiality statement is included later in the document:
Both the company and each and all of the undersigned hereby agree that any and all of the information and documentation provided to the company and/or any of the undersigned concerning the Delta Program is proprietary, confidential and copyrighted, and the company and each and all of the undersigned hereby agree to maintain such information and documentation in strict confidentiality, and further agree that they will not disclose any such information or documentation to any other company or person without the express written permission of Delta Energy Management, Inc., nor will the company or any of the undersigned use any of such information or documentation to replicate or duplicate the Delta Program [copyright] or the terms of this transaction for its or their own use or to compete with Delta Energy Management in any way, directly or indirectly. Both the undersigned and the company agree they will not divulge any information covered under this agreement to any person not bound by it....
Defendants' argument is fundamentally flawed in several respects. The confidentiality agreement appears to be designed to protect the Delta Program, which is not the object of Ales' inspection request. Any concern on Delta's or Petro's part that allowing Ales to inspect the requested documents would violate this agreement is unwarranted. Furthermore, the confidentiality restrictions contained in the trial court's judgment adequately protect the interests of defendants and their clients. Indeed, the agreement itself anticipates that disclosure to related third parties *45 such as Ales might occur, and provides, as does the judgment, that Ales will be bound by the confidentiality provisions. Defendants would confuse the issue, by noting that Ales refused to sign a confidentiality agreement they produced in connection with his inspection request. However, we have examined that document and find that it contains punitive provisions far in excess of the confidentiality provisions contained in the customer/corporate confidentiality agreement, quoted previously. The corporations would have required Ales to agree as follows:
... As a condition of making such inspection, [Ales], [his attorney] and [his CPA] agree, contract and promise that they will each maintain all such records and accounts of the Company, and any and all copies and/or extracts thereof provided to any or all of them, in strict confidence and secrecy, and that they each will not share or disclose such information to any other person, party or entity without the prior express written permission of the Company, signed by a duly elected and authorized officer of the Company, nor will they use such information to compete with the Company in any way, directly or indirectly. Furthermore, [Ales] acknowledges that he served as the attorney for the Company in its organization and incorporation, that he drew up the Company's Articles of Incorporation and/or its bylaws, that he is the Company's Registered Agent for Service of Process, and that, as an attorney for the Company and as its Registered Agent, [Ales] owes a fiduciary duty to the Company, and also the duty of Attorney Client privilege to the Company, as to all matters concerning the Company's business.
Any violation hereof by any of the undersigned will subject each such undersigned person as commits such violation to the payment of liquidated damages in the minimum amount of $10,000.00 in addition to such compensatory damages as the Company may be able to prove that it suffered as a result of such violation.
In the event that any party is required to file suit to enforce or protect his or its rights under this Agreement or any applicable law, the losing party shall be required, and does hereby agree, to reimburse the prevailing party for its (i) actual and reasonable attorney's fees, (ii) actual costs of investigation and preparation for trial, (iii) actual costs, expenses and fees of expert witnesses, and (iv) all costs of court.
This punitive and onerous provision has never been applied to any previous shareholder request to inspect corporate records. Clearly, Ales' use of the information in connection with shareholder litigation against the defendants could be interpreted as a breach of the agreement, subjecting him, his counsel and his accountant to liability for the punitive damages, actual damages, fees and costs.
We note another contradiction and inconsistency in defendants' argument. The confidentiality agreement prepared by the defendants provides that Ales "owes a fiduciary duty to the Company." However, in brief, the defendants argue, "... Ales being only a shareholder, not an officer or director, owed no fiduciary duty to Delta or Petro or their clients." [Emphasis added.]
As to items seven through nine, defendants claim the information is proprietary, and that access to the documents would enable a person with an oil and gas or insurance background to construct a competing program. However, defendants failed to introduce evidence that Ales is a business competitor or had the intention to construct a competing program. Were *46 Ales to attempt to do so, he would violate the terms of the trial court's judgment which prohibits use of the information "to compete in any way with defendants or any of the customers of defendants."
By requiring adherence to the confidentiality agreements in existence between defendants and their customers, and by including a non-compete provision, the trial court judgment adequately addresses and protects the proprietary/confidential issues raised by defendants in this appeal. See, Thornton ex rel. Laneco Const. Systems, Inc., at p. 9-10, 723 So.2d at 1118.
This assignment of error is without merit.
SECOND AND THIRD ASSIGNMENTS OF ERROR: The trial court erred in finding Ales to be a Petro "shareholder of record" where Ales did not possess a stock certificate and was not listed on Petro's share register, and in the absence of a contract for specific consideration to be paid in return for stock issues and a showing that Ales had paid that consideration.
The trial court, in its reasons for judgment, concludes that LSA-R.S. 12:103(D) does not require that Ales be in possession of a share certificate. The statute requires only that plaintiff be a shareholder "of record." Counsel for defendants conceded during appellate oral argument that, for purposes of his argument on appeal, Ales was a shareholder of both corporations. As noted in our discussion of the first assignment of error, and in an abundance of caution, we will address these assignments of error.
We find nothing in the corporation law or jurisprudence thereunder that would require us to adopt defendants' position that, absent a stock certificate, perse, a person may not have shareholder status. Neither of the cases cited by defendants supports this extreme position.
Smart v. Woodard, 441 So.2d 460 (La. App. 2 Cir.1983) involved competing claims to shareholder status between a shareholder who had sold his bank stock, but in whose name the stock remained registered with the knowledge and consent of all parties involved in order to circumvent application of federal banking law, and the purchasers of his stock. The purchasers sought to recognize the validity of and enforce an oral agreement between them and the seller as to how stock registered in the seller's name would be voted and to compel the bank to recognize and implement the disputed agreement among the buyers and seller. The court maintained the corporation's right to treat the seller/registered owner as the shareholder, to the detriment of the purchasers and found that Louisiana's corporation law is designed to set forth certain rules and procedures so that corporations can act and conduct business in spite of ongoing controversies that might exist between shareholders. The court relied on LSA-R.S. 12:601, which insulates the corporation from liability to persons claiming ownership of shares by virtue of an "undisclosed or latent legal or conventional title or interest therein." The instant case does not involve competing shareholder claims, or ownership claims governed by LSA-R.S. 12:601.
Redemer v. Hollis, 347 So.2d 48 (La. App. 2 Cir.1977) involved the claim of a "subscriber" to shareholder rights pursuant to LSA-R.S. 12:102(B) and 103(D). The corporate articles authorized the issuance of 100 shares of stock, and those shares had been issued prior to the execution of an agreement between the corporation and the plaintiff to issue additional shares, for which plaintiff subscribed. The additional shares had not been authorized *47 or issued. The corporation had the right to rely "on its records" in determining entitlement to access to financial information under LSA-R.S. 12:79.
LSA-R.S. 12:79 provides that unless otherwise provided in the corporation's articles or by-laws, the corporation, its officers and agents may recognize a person registered on its records as the owner of shares as the owner in fact for all purposes, and as the person exclusively entitled to have and to exercise all rights and privileges incident to the ownership of such shares, irrespective of the corporation's or its officers' or agents' actual or constructive notice to the contrary.
The court held that under these circumstances plaintiff was a subscriber, not a "shareholder," and his sole remedy was to require the corporation and its officers to take appropriate steps to authorize and issue the shares to which plaintiff had subscribed.
Unlike Redemer, Ales is a shareholder of issued and outstanding shares, not merely a subscriber. Ales was noted as a shareholder on numerous corporate records and submissions to the Internal Revenue Service. Furthermore, the very confidentiality agreement that Petro prepared for Ales' signature refers to Ales as a "shareholder of record of five percent or more of the issued and outstanding shares" of Petro. Clearly, he is a shareholder of record.
The defendants' third assignment of error relates to a cause of action to compel issuance of shares. Ales has not sought this relief, making defendants' argument moot.
These assignments of error are without merit.
FOURTH ASSIGNMENT OF ERROR: The trial court erred in determining "bad faith" and thus awarding attorneys fees, based on defenses raised in defendants' answer to the suit rather than on how defendants responded to Ales' request for records prior to the commencement of litigation.
Any corporation, or any officer or agent thereof, which or who in bad faith refuses to permit the exercise of the inspection rights set forth in LSA-R.S. 12:103 shall be liable to the shareholder seeking to exercise such rights to the extent of the costs and expenses of any proceeding necessary to enforce such inspection rights, and for any other damages actually sustained by the shareholder. LSA-R.S. 12:172 D.
Because of the punitive nature of this penal statute, its provisions are to be strictly construed and all doubts must be resolved against imposition of the penalty. Redemer v. Hollis, 347 So.2d at 49, citing Tichenor v. Tichenor, 190 La. 77, 181 So. 863 (1938).
Defendants base their contention of error on the trial court's finding of bad faith. Our review of the evidence convinces us that defendants were in bad faith when they initially conditioned Ales' access to the requested documents on his execution of a "confidentiality agreement" that went far beyond the provisions of the confidentiality agreements between the defendants and their customers, and which could be interpreted to prohibit use of the documents in connection with enforcement of Ales' rights as a shareholder. Defendants' bad faith continued when they produced certain documents with salient portions either left blank or blacked out. The inconsistent positions taken by defendants once litigation was imminent demonstrate further the continuing nature of their bad faith. These actions support the *48 trial court's finding not only of initial bad faith, but also of a campaign, engaged in following Ales' requests for inspection, to somehow contradict the corporations' records and maintain that Ales was not a shareholder.
Defendants claim that their actions were taken in reliance on the Matherne and Redemer decisions. Although defendants contend that they produced all documents that would be subject to inspection under these decisions, they ignore the uncontradicted testimony of Ales' CPA, who testified that not all the documents were produced and that of those produced, many had blank information, or provided information that was inconsistent as among various documents.
This assignment of error is without merit.
FIFTH ASSIGNMENT OF ERROR: The trial court erred in finding that Ales was not a competitor within the meaning of LSA-R.S. 12:103, where Ales admitted having attempted to compete with Petro and Delta.
Defendants suggest in brief that "[T]he fact that someone is not now a competitor, but has shown a desire to compete should be sufficient to deem someone a competitor under La. R.S. 12:103. Particularly when, [sic] Defendants [sic] only objection is to releasing confidential information." Quite simply, that is contrary to the business competitor exception contained in LSA-R.S. 12:103(D). The statute denies the inspection right only as to business competitors, not to potential, possible or otherwise speculative competitors. Defendants' concern for possible future competition by Ales is adequately addressed by the non-compete provision contained in the trial court's judgment.
The corporations are engaged in providing bonding for a specific type of oil and gas development activity, relating to well plugging and abandoned operations. The corporations admit that there is only one other entity engaged in that business, and introduced no evidence that Ales has any connection with that entity. Ales denied under oath that he is the corporations' business competitor. Under the manifest error standard of review, the trial judge as trier of fact is entitled to accept Ales' testimony, and its decision to credit the testimony, absent overwhelming contradictory objective evidence, cannot be manifestly erroneous.
This assignment of error is without merit.

CONCLUSION AND DECREE
For the foregoing reasons, the judgment of the trial court is affirmed. Costs of this appeal are assessed against the appellants together with attorneys fees in the amount of Three Thousand Five Hundred Dollars.
AFFIRMED.
TOBIAS, J., concurs.
TOBIAS, J., concurring.
I respectfully concur in order to assign additional reasons why I find the majority to be correct with respect to assignment of errors numbers 2 and 3.
La. R.S. 12:52C specifically authorizes the issuance of shares the consideration for which "shall be paid in cash or in corporeal or incorporeal property, or services actually rendered to the corporation." As such, the plaintiff, Mr. Ales, could be issued shares of stock for services performed for the two corporations.
A shareholder of a corporation is entitled to a certificate of stock. La. R.S. 12:57. A stock certificate is, however, only evidence of the ownership of stock and is not the stock itself. Volker v. Crescent *49 City Wholesale Florist, 17 So.2d 372 (La. App. 4 Cir. 1944). That is, the certificate is prima facie evidence of corporate ownership and is distinguished from actual ownership, which must be determined from all of the facts and circumstances of the case. Ackel v. Ackel, 595 So.2d 739 (La. App. 5 Cir. 1992). A certificate for stock is only paper evidence of ownership: that which is in reality the subject of ownership is the share of stock itself. Succession of McGuire, 151 La. 514, 92 So. 40 (La. 1922).
In this case, the overall facts and circumstances as noted by the majority clearly demonstrate that Mr. Ales was the owner of shares of stock of the two corporations.