JOAN BERNARD ARMSTRONG, Chief Judge.
hThe defendant-appellant, the Louisiana Horsemen’s Benevolent and Protective Association 1993, Inc., (hereinafter “LHBPA”) appeals that portion of the judgment of November 19, 2009, ordering it to allow the plaintiff-appellee, Stanley Seelig, to copy (1) all ballot envelopes and (2) copy records of Mr. Sean Alfortish’s compensation while protecting his social security number. Mr. Seelig filed an Answer to Appeal, appealing that portion of the judgment denying his request to inspect and copy all documents relating to the sound system installed in the home of Mr. Sean Alfortish, allegedly with funds of the LHBPA or monies donated to the LHBPA. Mr. Seel^s Answer to Appeal also seeks to have the denial of his request for attorney’s fees reversed and remanded.[1]
Mr. Seelig initiated this litigation on August 19, 2009, by filing a Petition for Writ of Mandamus, seeking the production of certain documents from the LHBPA.
This appeal centers around what appears to be a disputed election of the president and the board of directors of the LHBPA which occurred in March of 2008. It is undisputed that the LHPBA, is a nonprofit corporation. Mr. Seelig is a member of that corporation. On July 24, 2009, his counsel requested the right to |2inspect and copy numerous documents in the possession of the LHPBA. LHPBA has produced numerous documents. The only other documents that the trial court ordered produced were copies of ballot *910 envelopes and copies of Mr. Sean Alfortish’s compensation records with the social security number redacted.
The LHBPA ballot envelopes.
The LHPBA explained that it has already produced the ballots, but it resists producing the ballot envelopes as they contain the Social Security numbers of the LHBPA’s voting members for which reason the LHBPA contends they should remain confidential.
Mr. Seelig contends that certain persons may have acted to rig the election by mailing in a number of fraudulent ballots from around the state. Mr. Seelig contends that his actions were prompted by concern for the finances of the organization and an ongoing federal investigation into the LHBPA. The LHBPA does not deny the existence of the federal investigation.
Mr. Seelig contends that under La. R.S. 12:228 A when read together with La. R.S. 12:229 B, 12:232 A, 12:282 G and 12:233, the ballots should be considered to be corporate records and reports, open to inspection by members. The LHBPA argues that a member’s right to inspect its records is limited to those specific categories of records enumerated in La. R.S. 12:223 A. Of those categories, both parties agree that the crucial category of records insofar as this case is concerned is that pertaining to records of meetings of members and directors. The LHBPA contends that as the election was carried out via mailed in ballot and did not occur at a meeting of the members or directors, La. R.S. 12:223 A does not mandate the production of the records relating to the election. Mr. Seel-ig notes that based on the reasoning of the LHBPA, Mr. Seelig would be entitled to inspect and copy Relection records if the election were held at a membership meeting, but not if mailed in ballots were utilized instead. We agree with Mr. Seelig that such a result is not reasonable.
Mr. Seelig contends that the ballot envelopes are important “because the handwritten social security numbers on the ballot envelopes are handwriting exemplars which may establish how many ballots were sent in by the same small group of individuals who [allegedly] attempted to stuff the ballot box and may assist in identifying the individuals who perpetrated this voting fraud ...” Mr. Seelig points out that there are no names on the ballot envelopes, so there is nothing to connect a social security number to a name. For that reason, Mr. Seelig contends that copying the ballot envelopes invades no ones privacy. Moreover, Mr. Seelig was willing to allow the LHPBA to redact the last four digits of the numbers as added security.
We conclude that the trial court did not err in ordering the production of the ballot envelopes based on a reasonable interpretation of the statutes cited above.
The LHPBA also argues that because this is not technically an election contest, but merely an action for a writ of mandamus, Mr. Stanley has no right to discover the ballot envelopes. However, LHBPA cites Bourgeois v. Landrum, 396 So.2d 1275, 1276 (La.1981), for the proposition that the reason Mr. Seelig may wish to examine corporate records is irrelevant. As we read Bourgeois this means that it does not matter why Mr. Seelig wants to see and copy the records, whether to question an election or out of mere curiosity, as long as they are considered to fall within the ambit La. R.S. 12:223 A. The Court’s sole function is to determine whether the documents sought by the plaintiff are among those listed in La. R.S. 12:223 A. Id., 396 So.2d at 1277 (La.1981). As stated previously, we find that |4when La. R.S. 12:223 A is read in context with other statutes cited above, the most reasonable *911 interpretation would include these ballot envelopes as being among those types of records open to membership inspection as contemplated by La. R.S. 12:223 A.
Sean Alfortish’s compensation.
The LHBPA complains that the trial court erred in requiring it to allow Mr. Seelig to copy Mr. Sean Alfortish’s compensation records. The LHPBA states that it allowed Mr. Seelig to inspect the compensation records but it denied him the right to copy those records.
Among the records that the LHPBA is required by La. R.S. 12:223 A to disclose to its members are records of its “disbursements.” This Court held in Ales v. Sewell, 00-2017, p. 11 (La.App. 4 Cir. 10/17/01), 800 So.2d 36, 43, that such records include “cash journal of all disbursements showing the individual or corporation to whom funds were disbursed and the amount of disbursement ...” Based on this Court’s reading of Ales along with the clear language of the statute, we find that a reasonable reading of the term “disbursements” is broad enough to include disbursements to Mr. Alfortish in the form of compensation records. As this Court explained in Ales: “The scope of the minority shareholder’s inspection right under the statute is wide-reaching ...” Id.
In its original, brief the LHBPA notes the trial court’s reliance on Owens v. Southwest Ouachita Waterworks, Inc., 42,278 (La.App. 2 Cir. 6/20/07), 960 So.2d 1243, for the proposition that the statutory right of shareholders to examine corporate records necessarily includes the right to copy them. The LHBPA does not dispute this legal principle. Instead, the LHBPA argues that a reasonableness or common sense test should apply. The LHBPA contends that Mr. Seelig’s |Brequests do not pass that test. However, as we find that the primary and undisputed principle espoused by Owens is that the right to examine includes the right to copy, the burden should be upon the party opposing the copying to prove unreasonableness, and that the trial court should deny the right to copy only based on a showing of the existence of exceptional circumstances. The burden of proving that a shareholder possessed ill motive is on the corporation seeking to deny the shareholder’s right to inspect the records. Ales, supra, 00-2017, p. 9, 800 So.2d at 42. This Court specifically noted in Ales that the manifest error/clearly wrong standard of review applied. Id., 00-2017, p. 10, 800 So.2d at 42. We find that the LHBPA has not shown the existence of circumstances so exceptional as to allow this court to conclude that the trial court was manifestly erroneous/clearly wrong in ordering the LHBPA to copy certain documents. Accordingly, we find no error in the trial court’s decision to compel the LHBPA to allow Mr. Stanley to copy Mr. Alfortish’s compensation records.
MR. SEELIG’S ANSWER TO THE APPEAL
Mr. Seelig filed an Answer to Appeal in which he sought to overturn the trial court’s denial of his request for copies of all “documents relating to the sound system installed in the home of Sean Alfortish with funds of the LHBPA or monies donated to the LHBPA”; and he contends the trial court erred in denying him attorney’s fees pursuant to La. R.S. 12:264 B.
Mr. Seelig’s claim for attorney’s fees.
La. R.S. 12:264 B provides that:
B. Any corporation, or any officer or agent thereof, which or who shall in bad faith refuse to permit the exercise of inspection rights pursuant to R.S. 12:223(C), Rshall be liable to the member or members seeking to exercise such rights to the extent of the costs and *912 expenses of any proceeding necessary to enforce such inspection rights, and for any other damages actually sustained by such member or members.
Normally, there is no right to an award of attorney’s fees in Louisiana unless specifically provided by contract or statute. There is no mention of attorney’s fees in La. R.S. 12:264 B. However, the right to attorney’s fees has been recognized by the jurisprudence under La. R.S. 12:172 D applicable to for-profit corporations, and the language of La. R.S. 12:172 D is for all intents and purposes word for word identical to the language of La. R.S. 12:264 B, the only differences being those required by the fact that 12:264B refers to non-profit corporations and 12:172D refers to for-profit corporations. In this regard, Mr. Seelig cites Lanaux v. Ace Production, Inc., (La.App. 4 Cir.1981), 396 So.2d 461; Ales v. Sewell, supra; and Guidry v. Gulf Coast Tubing, 09-621 (La.App. 3 Cir. 12/9/09), 24 So.2d 1019. Based on these three cases and the clearly parallel language of La. R.S. 12:264 B and La. R.S. 12:172 D, we find that a member may claim attorney’s fees as part of “the costs and expenses of any proceeding necessary to enforce such inspection rights,” under either statute where the refusal to allow inspection is found to be in bad faith. Implicit in the refusal to award attorney fees is a finding by the trial court that there was no bad faith on the part of the LHBPA. In the absence of manifest error we must accept this finding.
Mr. Seelig’s request for records belonging to the Louisiana Horsemen’s Benevolent and Protective Association, Inc.’s Charitable Foundation, Inc.
It is undisputed that funds donated to the LHBPA were in turn donated to the Louisiana Horsemen’s Benevolent and Protective Association, Inc.’s Charitable Foundation, Inc. (hereinafter the Foundation”). Mr. Seelig contends, in effect, uthat the Foundation is an alter ego of the LHBPA, and as such he should be allowed to inspect and copy certain of the Foundation’s financial records. However, he does not dispute the fact that, at least on its face, the Foundation is a separate legal entity. The Foundation is not a party to this suit. The record reflects that Mr. Seelig petition requests only a mandamus to allow him to inspect/copy certain corporate records of the LHBPA. His arguments suggest that he suspects there may be some impropriety in the handling of LHBPA funds as donated to the Foundation. If Mr. Stanley’s goal is to pierce the Foundation’s corporate veil and conflate the Foundation into the LHBPA and/or to prove some impropriety concerning certain funds flowing from the LHBPA to the Foundation, this suit for a mandamus directed solely at the LHBPA is not the proper vehicle. As the record does not reflect that Mr. Stanley has any direct standing to raise any issue as regards the foundation, along with the fact that the Foundation is not a party to these proceedings, we find no error in the decision of the trial court to deny Mr. Seelig’s request for the production of the Foundation records.
For the foregoing reasons, the judgment of the trial court is affirmed.
AFFIRMED.

. Neither party appeals that portion of the judgment finding that the LHBPA did not fund any settlement of sexual harassment claims against it or any of its employees.