423 So.2d 713 (1982)
Ronald J. NAQUIN, Plaintiff-Appellee,
v.
AIR ENGINEERED SYSTEMS & SERVICES, INC., et al., Defendants-Appellants.
No. 82-327.
Court of Appeal of Louisiana, Third Circuit.
November 12, 1982.
Rehearing Denied January 6, 1983.
*714 Porteus R. Burke, New Iberia, for defendants-appellants.
Charles N. Wooten, Sr., Lafayette, for plaintiff-appellee.
Before DOUCET, LABORDE and YELVERTON, JJ.
DOUCET, Judge.
Defendants, Air Engineered Systems & Services, Inc., and its majority stockholders, appeal the judgment of the trial court allowing plaintiff-shareholder, Ronald J. Naquin, to inspect certain corporate records and assessing penalties for defendants' refusal to allow examination. We affirm.
The trial judge accurately summarized the facts giving rise to this suit as follows:
"On March 5, 1982, Mr. Naquin filed this suit for a mandamus issued to the defendant corporation, ordering them to allow the plaintiff to inspect the books and records that they have, and he seeks penalties and attorney's fees under R.S. 12:172(D). An exception of no cause of action was filed by the defendant, claiming that the plaintiff had no right to inspect the books as he does not hold the requisite number of shares under R.S. 12:103, and they also oppose the order for the writ of mandamus, and they request an order prohibiting inspection of the books.
The facts are that on December 20, 1977, Air Engineering Systems and Service, Inc. was organized and 300 shares of common stock were issued to the following:
*715 Ronald Naquin, plaintiff, 100 shares; Keith Dubois, defendant, 100 shares, the corporate president; Dennis Hoffpauir, a defendant, 100 shares, the corporate secretary-treasurer.
The plaintiff was employed by the corporation until November 17, 1981, when he was discharged. He made a written request (dated November 20, 1981) to the defendant for an appointment to examine the corporation books and records and the plaintiff was advised to contact Attorney Burke. Mr. Burke received a written demand (dated February 8, 1982) from the plaintiff's attorney to inspect the corporate records. On February 10, 1982, the defendant mailed a notice to all of the shareholders of a special meeting of the corporation. The defendants also asked the plaintiff for a hold-harmless agreement, an indemnification agreement, concerning the inspection of the books, claiming that the plaintiff was a competitor. The plaintiff refused to sign this hold-harmless agreement.
On February 26, 1982, a special shareholders meeting was held whereby the two individual defendants voted to increase the capital stock by issuing 15,000 new shares of stock at $10.00 each. Preemptive rights were granted and the two individual defendants each subscribed to 5,000 shares of stock, bringing their total to 5,100 shares each. The plaintiff did not exercise his option and still holds 100 shares. On February 28, 1982, the defendant mailed plaintiff what they termed is a financial statement, showing that the corporation had total assets of $885,181. The so called balance sheet of February 28, 1982, is unsigned and was prepared without an audit. The plaintiff claims that his balance sheet shows assets of $2,016,500.
On March 5, 1982, this suit was filed and the two issues are: Does the plaintiff have a cause of action to bring this request for a mandamus and if so, is he entitled to view the corporate records.
The evidence showed that the defendant corporation is in the business for the sales and service of air compressors all over southern Louisiana and even out of state. Their sales are about 85 to 90 percent of the business and the service makes up the balance. The plaintiff was employed mostly as a salesman for the defendant corporation. Sometime in November 1981, dissatisfaction occurred between the three shareholders and Mr. Naquin's services were terminated. At about the same time, Mr. Naquin became self-employed, being the sole owner of Air Compression Energy Systems, which is a competitor to the defendant corporation. In November the corporation owed the plaintiff $60,000. He demanded payment and received it from the corporation. Another employee of the defendant, Mr. Braumbaugh, left the defendant and joined the plaintiff in January of 1982.
The two individual defendants also demanded money from the corporation and they used that, inter alia, to purchase the 15,000 shares of new stock. In addition to that, the salary of Mr. Hoffpauir was increased in March from $3,500 a month to $6,000 a month.
Mr. Dubois, the president of the corporation, stated that the plaintiff's main area was in sales, that the business they are in is very competitive from a money standpoint, and from a design standpoint. Apparently their business is to try to design and install compressors to fit on drilling rigs, utilizing the least weight and space available. In addition to the machines, there is a lot of details and drafting necessary to this, and that the plaintiff was not connected with that aspect of it. Mr. Dubois further said that the plaintiff had made a contract with a corporation while he was still with the defendant corporation, and after he left them in November, when Mr. Dubois inquired, he learned that the contract was awarded to the plaintiff's new outfit. Because of this and other behavior, such as going into competition with them and hiring away at least one employee and attempting to possibly entice another away, the defendants do not want the plaintiff to look at their rig packages and books because they fear that he would use that in an unfair manner. He did indicate that he would not object to a protective audit."
*716 The trial court concluded that plaintiff was a business competitor of the defendant corporation entitled to inspection of defendants' financial books and records as they pertained to net worth of the corporation. Matters pertaining to design and structure of defendants' product were excluded. A writ of mandamus was issued accordingly. Thereafter, defendant filed the present suspensive appeal.
Defendant urges the following arguments on appeal:
1. The lower court erroneously refused to prevent inspection of corporate books by a competitor owning less than twenty-five per cent (25%) of the outstanding shares.
2. The lower court erroneously awarded attorney's fees to plaintiff.
3. The lower court erroneously restricted its protective orders to bid packages or matters which pertain to design and structure since any review of the corporate books will reflect accounts for which both parties are competing.
R.S. 12:103(D) provides in pertinent part that on five days written demand any shareholder, except a business competitor, who owns two percent (2%) of the stock, shall have the right to examine for any proper and reasonable purpose the records and accounts of the corporation. A business competitor is required to own a minimum of twenty-five percent (25%) of all outstanding shares of the corporation for six months before he may assert the abovementioned rights. A court may deny the right of inspection as to confidential matters or order the production of documents pursuant to applicable provisions of the Code of Civil Procedure.
As was noted in Bennett, 2 La.L. Rev. 597 (May, 1940): "The right to information is important to every shareholder. Unless he can apprise himself on corporate affairs, his right to vote becomes a mirage." We find, as did the trial judge, that the purpose of issuing the new shares with subscription rights while withholding access to corporate records was to place the plaintiff in a position where he could not intelligently buy new stock and, as a result thereof, would lose his requisite twenty-five percent share necessary to inspect the books as a business competitor. Appellant asserts that plaintiff lost his right to inspection of corporate records upon his failure to timely exercise preemptive rights as to the new issue. If the law were as appellant contends, shareholders such as the former boardmember herein could be denied the right to inspect corporate records by the majority shareholders' rapid watering of shares. The determinative date, vis-a-vis R.S. 12:103 rights, is the date of demand, not the date of corporate compliance. Plaintiff was a shareholder of record, owning the requisite number of shares on November 20, 1981, the date of demand. Therefore, he was entitled to inspect the corporate books. That he subsequently lost his 25% status is immaterial.
Appellant also contends that plaintiff's November 20, 1981 demand for inspection was insufficient to commence the 5-day period within which the corporation is to respond insofar as the abovementioned letter asked only to schedule an appointment for examination of books and records. We find no merit in the argument. Plaintiff's assertion of right was clear.
The decree of the trial court that attorney's fees would be awarded pursuant to R.S. 12:172(D) is not a final appealable judgment inasmuch as the trial judge stated "this award shall be made at a subsequent date" and the suspensive appeal herein intervened. Nevertheless, for reasons of judicial economy, we address the issues presented by appellant.
We are well aware of defendants' contention that provisions of R.S. 12:172(D) are penal in nature and are therefore subject to the rule of strictis juris. The strict construction urged by appellant, however, would render the statute negatory. Appellant maintains that since R.S. 12:172(D) does not expressly specify attorney's fees as recoverable, same cannot be construed to fall within the statute's penal provisions of "costs", "expenses" or "any other damages". *717 Such an interpretation would render the statutory rights meaningless. Attorney's fees may be recovered pursuant to R.S. 12:172(D) where the evidence reveals that defendant corporation acted in bad faith in refusing to permit statutorily authorized examination of corporate records by qualified shareholder. Lanaux v. Ace Production, Inc., 396 So.2d 461 (La.App. 4th Cir.1981).
With respect to appellant's final assignment of error, that the trial court erroneously restricted its protective order, the record discloses that this argument is entirely speculative. The burden is upon the corporation to sustain its allegations that a shareholder's motives are improper or unreasonable and the evidence is insufficient to warrant denial of inspection. Plaintiff, as former sales agent for appellant, is already aware of the potential market and customers served by the corporation. Documents relative to the company's past activities are necessary for plaintiff to ascertain the value of his interest in the corporation. The trial court did not exceed its power in ordering the production of documents.
For the reasons assigned hereinabove, the judgment of the trial court is affirmed at appellant's cost.
AFFIRMED.