MARION F. EDWARDS, Judge.
 

 |2P efen d ant/app ellant, Greater Lakeside Corporation, Inc. (“GLC”), appeals a judgment granting a writ of mandamus in favor of plaintiffs/appellees, Carole A. Feil, Marilyn R. Barry, and Judith Jaffe (referred to herein collectively as “the Feil plaintiffs”).
 

 The Feil plaintiffs are sisters who each own 25 percent of the stock in GLC. Jeffrey Feil, their brother, owns the remaining 25 percent of the stock and selves as GLC’s president. In September 2008, the Feil plaintiffs made a written request to GLC for numerous records and documents, averring that, as shareholders, they were attempting to ascertain the value of
 
 *522
 
 the GLC stock. A Confidentiality Agreement was signed by the Feil plaintiffs and included in the request. Among the requests, was a specific demand for documents
 

 relating to fees, salaries, commissions and/or dividends paid within the last five years by GLC or by any entity in which GLC holds an interest, direct or indirect, to Jeffrey Feil or to any entity of which Jeffrey Feil is an Affiliate |:1(i.e., any entity as to which Jeffrey Feil possesses, directly or indirectly, the power to direct or cause the direction of its management and policies, whether through the ownership of voting securities, by contract, or otherwise).
 

 In response to that particular request, GLC answered that
 

 La. R.S. 12:103 authorizes the inspection of particular records of the corporation in which the shareholder owns stock, not records of other entities in which that corporation in turn may hold some interest ... we are producing certain accounting records of GLC, but we are not producing, nor do we believe that we are required to produce, records of other companies or entities.
 

 Certain of the items demanded were, in fact, disclosed. In December of 2008, the Feil plaintiffs filed a supplemental written demand for documents that had not already been released, plus additional documents “the need for which became clear as a result of a review of the First Documents.” The supplemental demand explained that their accountants had advised that it was necessary for them to review all documents in order to formulate an opinion as to the value of their stock.
 

 Our clients’ inspection of the First Documents revealed that the Company is a holding company. It has no significant operating assets other than the interests it owns in other limited liability companies and partnerships, each of which is apparently an operating entity that owns the entirety of a particular real estate property. Unless our clients can inspect the books and records of those underlying operating entities, they will have no means of obtaining the information necessary to enable them to determine the value of their stock in the Company, because that value depends entirely upon the value of the underlying owned entities ... the Company’s [assets] consist almost entirely of ownership interests in operating subsidiaries.
 

 Regarding document request involving Jeffrey Feil, the supplemental demand stated:
 

 Mr. Feil enjoys sole operating control of the Company. Our clients do not have knowledge of all financial transactions or arrangements between Mr. Feil (or his | ¿affiliates) and the Company. If such arrangements were to include, for example, periodic payments by the Company to an affiliate of Mr. Feil in amounts that exceeded the value of the services performed by the Feil affiliate, those arrangements could have a material adverse effect on the value of the stock of the Company, as reflected in its financial statements. Our clients’ request for documents relating to transactions and arrangements of this type is well within the scope of their inspection rights under R.S. 12:103.
 

 Dissatisfied with GLC’s response, in January of 2009 the Feil plaintiffs filed a Petition for Writ of Mandamus for Access to Corporate Records, alleging that GLC had not fully complied with their requests for financial information. Citing La. R.S. 12:103, the Feil plaintiffs contended that they had the right to inspect corporate records, listing numerous documents including, for purposes of this appeal, documents related to entities “in which GLC
 
 *523
 
 holds an interest, direct or indirect....” The Feil plaintiffs requested the writ be determined in a summary proceeding. GLC answered the petition, averring that the Feil plaintiffs lacked a “proper and reasonable purpose” for the request, and that it had already produced all corporate records to which the Feil plaintiffs were entitled. GLC also urged that a number of specific documents encompassed records of corporations and legal entities other than its own. Following a hearing, the trial court granted the mandamus without reasons. GLC filed this timely appeal.
 

 At the hearing, Elliott A. Lesser (“Mr. Lesser”), qualified as an expert witness, testified as a Certified Public Accountant. The Feil plaintiffs had asked him to compile a document request so that their respective interests in GLC could be determined. There were twenty-six companies and partnerships in which GLC owned an interest. The percentage of interest varied from company to company. The net value of the ownership interests in 2003 was given for thirteen of the companies, but the net value of the investments for 2007 was unknown for all |stwenty-six entities. Mr. Lesser testified that related party transactions could have an impact on value, depending upon the reasonableness of the matters involved. For example, there could be payments or fees paid to related parties which are not typically at arms length. It would be necessary to know if such payments were reasonable in relation to services rendered, and such information would ultimately impact the value of the property. Similarly, there might be loans or guarantees that would impact the value of the individual entities in which GLC has an interest.
 

 Darrell Longo (“Mr. Longo”), controller of GLC, testified that GLC is a holding company that invests in entities that own real estate, receives distributions from those investments, and also manages and does accounting for some properties that it owns. GLC also manages some properties that it does not own. GLC’s financial statements are generated by a New York management company; however, the accounting staff in Metairie prepares monthly financial statements in order to monitor GLC’s interests in other companies as well as monitoring its own assets. This includes creating ledgers, bank reconciliations, and billings for entities in which GLC owns an interest. GLC creates and maintains monthly folders for each of these entities (except for about six companies) and has records dating to 2002. The documents for the owned entities other than GLC were not produced. With regard to the non-owned properties, GLC bills for management services, and these records are maintained separately.
 

 On appeal, GLC urges that the trial court misconstrued La. R.S. 12:103(D)(l)(a) by requiring GLC to produce not only its own records, but also records of other wholly separate entities in which it owns an interest; that is, a broad range of documents extending far beyond the company’s records and accounts.
 

 | fiIn Louisiana, shareholders’ inspection rights derive chiefly from the provisions of the Louisiana Business Corporation Law. Principally, La. R.S. 12:103 states:
 

 § 103. Corporate records; right of shareholder to inspect
 

 A. Every corporation shall keep at its registered office or at its principal place of business in or outside of this state:
 

 (1) Books and accounts showing the amounts of its assets and liabilities, receipts and disbursements, and gains and losses; and
 

 (2) Records of the proceedings of the shareholders, of the directors, and of committees of the board.
 

 
 *524
 
 B. Every corporation shall keep at its registered office, or at its principal place of business or at the office of a transfer agent in or outside of this state, a share register, or a stock certificate record, giving the names of the shareholders, and showing their respective addresses, as and if furnished by each shareholder, the number and classes of shares held by each, and the dates on which the certificates were issued.
 

 C. If the records required by subsections A and B of this section are not kept at the registered office, information as to their location shall be made available at the registered office. Such records may be in written form or in any other form capable of being converted into written form within a reasonable time.
 

 D. (l)(a) Upon at least five days’ written notice any shareholder, except a business competitor, who is and has been the holder of record of at least five percent of the outstanding shares of any class of a corporation for at least six months shall have the right to examine, in person or by agent or attorney, at any reasonable time, for any proper and reasonable purpose, any and all of the records and accounts of the corporation and to make extracts therefrom.
 

 (b) Two or more shareholders, each of whom has been a holder of record of shares for the period aforesaid and whose aggregate holdings equal the percentage aforesaid, may join in such request and jointly exercise these rights.
 

 |7(c) Holders of voting trust certificates representing shares of the corporation shall be regarded as shareholders for the purposes of this Section.
 

 (2) In case of stock held or acquired by, or held by or through an interposed person for, a business competitor or a person who owns stock or is otherwise interested in a corporation that is a business competitor, he or it must own not less than twenty-five percent of all outstanding shares of the corporation for a period of six months before he or it may demand the rights and privileges as set forth in this Subsection.
 

 (3) Nothing contained in this Subsection shall impair the power of the court:
 

 (a) To deny the right of inspection as to confidential matters; or
 

 (b) To order the production of documents pursuant to and subject to the limitations of applicable provisions of the Code of Civil Procedure.
 

 E.Subject to such restrictions or qualifications as may be stated in the articles or by-laws, or in a resolution of shareholders adopted by a majority of the voting power present, a corporation may confer upon the holders of bonds, debentures or other obligations of the corporation, the right of inspection of records and accounts, and any other rights which the shareholders of the corporation may have.
 

 In support of its position, G.LC cites
 
 Matherne v. Heffron.
 

 [1]
 

 In that case, the First Circuit examined the intent of the statute to determine which corporate records are subject to examination by the requesting shareholder and held that the shareholder was entitled to examine the general ledger; cash journal of all receipts and deposits; cash journal of all disbursements showing the individual or corporation to whom funds were disbursed and the amount of disbursement; each unaudited quarterly financial statement of the corporation reflecting revenues, their sources, and expenses; audited financial statements; records of all proceedings of
 
 *525
 
 | ^shareholders, directors and committees of the board including minutes, share register book, and all corporate records; and State and Federal tax returns. Under the facts of that case, the court rejected the shareholder’s request to examine the originals of every cancelled check, deposit slip, or invoice of the corporation.
 

 The Feil plaintiffs refers us to
 
 Ales v.
 
 Seivell
 
 [2]
 
 for the proposition that the statute is more far reaching than the documents specifically described in
 
 Matheme
 
 and permits inspection of the documents it seeks.
 

 By definition, a holding company is a company formed to control other companies, usually confining its role to owning stock and supervising management.
 
 [3]
 
 According to Mr. Longo, GLC is a holding company investing in entities that own real estate. GLC receives distributions from those investments, as well as manages and does accounting for some of the owned properties. “Assets” means all of a corporation’s property and rights of every kind.
 
 [4]
 

 From the record, it appears that GLC’s investments are its principal assets. Mr. Lesser testified how transactions between related companies could impact the value of the individual entities in which GLC has an interest and how information regarding these transactions is necessary to value the Feil plaintiffs’ interests.
 

 Matheme
 
 discussed certain documents to which the plaintiff was entitled under La. R..S. 12:103, denying the plaintiff access to the originals of every cancelled check, deposit slip, or invoice of the corporation as unreasonable and unjustified by the record. The
 
 Matheme
 
 court then listed those documents to which the plaintiff was entitled under the facts of that case. We find the holding of
 
 Matheme
 
 is too narrow to be dispositive of the present matter. Under the statute, |athe shareholder is entitled to inspect any and all of the records and accounts of the company. The right to inspect should extend to all relevant records necessary to inform the shareholder about corporate matters in which he has a valid interest.' We agree with the Fourth Circuit that the scope of the shareholder’s inspection right under the statute is more wide-reaching.
 
 [5]
 
 Depending on the action before it, the court may order broader access by the production of documents pursuant to, and subject to, the limitations of applicable provisions of the Code of Civil Procedure. As in
 
 Matheme,
 
 the court may limit requests for indiscriminate or blanket inspection of documents that it considers to be “fishing expeditions.” In other words, the scope of inspection is determined by the “proper and reasonable purpose” for which it is sought.
 

 The matter before us is somewhat atypical in that the Feil plaintiffs are united in requesting information from this closely held corporation, of which they hold a combined 75 percent interest. Although it has been alleged that Jeffrey Feil has sole operating control of the company, we do not have the Articles of Incorporation, contracts, or other corporate documents regarding the management provisions, or any corporate resolutions relative to the Board of Directors, the Feil plaintiffs’ voting powers, Jeffrey Feil’s authority, etc. Under these circumstances, there is some question of GLC’s authority to challenge the right of the majority of stockholders to the information.
 

 
 *526
 
 The Feil plaintiffs have an inarguably legitímate interest in the worth of GLC. The value of GLC must of necessity include valuations of the companies in which it owns an interest. Thus, the records generated and maintained by GLC related to its assets, consisting of investments in other companies, must be made available to the Feil plaintiffs. We further note that GLC, in turn, has the right |Tnunder La. R.S. 12:103 to request certain records of the companies in which it has at least a 5 percent interest, in order to evaluate its investments.
 

 Under the circumstances, and considering that this is a closely held corporation, records relating to management and accounting performed by GLC or Jeffrey Feil for other corporations in which GLC has less than a 5 percent interest (or no interest whatsoever) and which accounts are kept by GLC should also be made available. The record indicates that the Feil plaintiffs are attempting to ascertain whether or not there exists any conflict of interest between Jeffrey Feil’s transactions with other corporations as they may pertain to GLC. To the extent that Jeffrey Feil has sole operating control, he owes a fiduciary duty to GLC. Any such transaction must be in good faith, negotiated and confected at arms length.
 
 [6]
 
 The fiduciary cannot take advantage of his position for his personal benefit to the detriment of the corporation or its shareholders.
 
 [7]
 
 This is a proper and reasonable purpose for disclosure.
 

 In summary, the Feil plaintiffs are entitled to the records generated, maintained, and possessed by GLC as to all companies in which it has ownership interest, or in which it performs accounting and management functions. However, the judgment of the trial court granted the writ as to all the documents outlined in the petition. In that petition, certain things are requested from entities “in which GLC holds an interest, direct or indirect ...” and also asks for “all documents relating to” certain transactions. The phrases “all documents” and “indirect interest” are overbroad and render the scope of the mandamus somewhat ambiguous.
 

 luFor the foregoing reasons, the judgment of the trial court granting the writ of mandamus is affirmed. The matter is remanded to the trial court for clarification, including any necessary amendment in accordance with this opinion.
 

 AFFIRMED IN PART; REMANDED FOR CLARIFICATION IN ACCORDANCE WITH THIS OPINION.
 

 [1]
 

 . 496 So.2d 446, 448 (La.App. 1 Cir.1986).
 

 [2]
 

 . 00-2017 (La.App. 4 Cir. 10/17/01), 800 So.2d 36.
 

 [3]
 

 .
 
 Black’s Law Dictionary
 
 (8th ed.2004).
 

 [4]
 

 . La. R.S. 12:1 (D).
 

 [5]
 

 .
 
 See, Ales v. Sewell, supra.
 

 [6]
 

 .
 
 Spruiell v. Ludwig,
 
 568 So.2d 133, 141 (La.App. 5 Cir.1990),
 
 writ denied,
 
 573 So.2d 1117 (La.1991).
 

 [7]
 

 .
 
 Id.