Judgment rendered November 17, 2021.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 54,160-CA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

NELL SHEHEE                                     Plaintiff-Appellee

versus

KILPATRICK'S ROSE-NEATH                         Defendant-Appellant
FUNERAL HOMES,
CREMATORIUM AND
CEMETERIES, INC.

* * * * *

Appealed from the
First Judicial District Court for the
Parish of Caddo, Louisiana
Trial Court No. 614,718

Honorable Ramon Lafitte, Judge

* * * * *

WILLIAM T. F. DYKES, A LAW               Counsel for Appellant
CORPORATION
By: William T. F. Dykes


AYRES, SHELTON, WILLIAMS,                 Counsel for Appellee
BENSON & PAINE, LLC
By: Dannye W. Malone
    Lee H. Ayres
    J. Todd Benson
    R. Chaz Coleman


* * * * *

Before MOORE, STEPHENS, and THOMPSON, JJ.

**THOMPSON, J.**

This matter arises from disgruntled, polarized siblings who inherited equal interests in the family business who find themselves embroiled in a dispute regarding access to corporate financial documents. After repeated demands to inspect and copy corporate documents were disregarded, one sibling instituted this mandamus suit, seeking an order of the court to force the family business to produce her requested voluminous documents. Pursuant to the Louisiana Business Corporations Act, the trial court ordered the business to produce the requested documents, subject to a confidentiality order. On behalf of the family business, the siblings with operational control seek review of that order, asserting the absence of the required good faith and proper purpose for requesting the records.

After a detailed review of the nature of the records sought, a determination that they are relevant to the financial practices and well-being of the company and include information pertinent in valuing the ownership interests of the parties, the trial court ordered the company to produce most of the requested documents. Because that finding of the trial court was not manifestly erroneous, we affirm.

## FACTS & PROCEDURAL HISTORY

Plaintiff, Nell Shehee ("Shehee"), and her three siblings inherited the defendant business, Kilpatrick's Rose-Neath Funeral Homes, Crematorium and Cemeteries, Inc. ("Rose-Neath"). Each sibling owns a 25% share in Rose-Neath. There has been an apparent longstanding battle between the siblings regarding the control and operation of Rose-Neath, and they have aligned themselves in two factions. On May 16, 2018, Shehee submitted a

shareholder records request to Rose-Neath, pursuant to La. R.S. 12:1-1602(C)[1] of the Louisiana Business Corporations Act. Shehee hired Chad Garland ("Garland"), a certified public accountant and business valuation expert, to review the records so that her shares could be valued. Garland submitted a list of 16 categories of documents that he needed to review in order to properly value her shares in Rose-Neath, and Shehee's demand letter to Rose-Neath listed those categories of documents. On May 31, 2018, Rose-Neath, through its attorney, replied that it would not be providing the documents requested because Shehee did not meet the requirements of La. R.S. 12:1-1602.

In June and July of 2018, multiple letters were exchanged between the parties in attempts to resolve the dispute regarding the records request, to no avail. On January 25, 2019, Shehee re-urged her records request, seeking review of the original 16 categories of documents, along with a request to review Rose-Neath's monthly bank statements for the past five years. The final categories of documents that Shehee requested to review are: (1) monthly balance sheets from the past five years, (2) monthly profit and loss statements from the past five years, (3) Rose-Neath's tax returns from the past five years, (4) Rose-Neath's monthly bank statements from the past five

---

[1] A shareholder of at least five percent of any class of the issued shares of a corporation for at least the preceding six months is entitled to inspect and copy, during regular business hours at a reasonable location specified by the corporation, any and all of the records of the corporation if the shareholder meets the requirements of Subsection D of this Section and gives the corporation a signed written notice of the shareholder's demand at least five business days before the date on which the shareholder wishes to inspect and copy the records. A shareholder of less than five percent of a corporation's issued shares may exercise the rights provided in this Subsection if the shareholder delivers to the corporation, either before or along with the written notice of demand, written consents to the demand by other shareholders who, in the aggregate with the shareholder making the demand, own the required percentage of shares for the required period.

years, (5) Rose-Neath's general ledger from the past five years, (6) any audits from the past five years, (7) any contracts and/or obligations pending between Rose-Neath and any third parties, (8) any pending lawsuits and/or claims between Rose-Neath and any third parties, (9) all company credit card statements from the last five years for cards which were issued to any and all officers and directors of Rose-Neath, (10) any appraisals of property owned by Rose-Neath, (11) any debts and obligations owed on property owned by Rose-Neath, (12) any and all leases and subleases of the real estate formerly occupied by Reeves Marine, (13) any and all contracts with A&M Shehee Interest, Inc., (14) any and all leases, management agreements, consulting agreements, and any other contracts with any entity, which is owned (in whole or in part) by any shareholder of Rose-Neath, (15) any contracts, purchase orders, and invoices to or from Travis Grisham, (16) any contracts, purchase agreements, and invoices to or from Charter Brokerage, and (17) all minutes from Rose-Neath's board meetings over the past five years.

On February 21, 2019, Rose-Neath again denied Shehee's request to review the documents. Thereafter, the parties unsuccessfully attempted to draft a non-disclosure agreement, in an effort to release the records. Finally, on February 29, 2019, Shehee filed a writ of mandamus, requesting that the district court order the inspection and copying of the books and records she had requested from Rose-Neath.

A hearing was held on September 16, 2019, whereby the parties presented arguments about whether an exchange of letters between the parties in 2017 constituted a contract between the two parties to sell

Shehee's shares at book value, whether a protective order was appropriate, and whether Shehee was entitled to the 17 categories of documents requested as a shareholder, pursuant to La. R.S. 12:1-1602. Rose-Neath argued that on February 20, 2017, Shehee sent a letter, wherein she stated she was an oppressed shareholder and offered to sell her shares of the company to Rose-Neath for *fair market value*. On March 20, 2017, Andrew Shehee and Margaret Shehee, Shehee's siblings and the shareholders with operational control of Rose-Neath, sent her a letter, accepting her offer to sell her shares of Rose-Neath at *book value*. They cited Article 12 of Rose-Neath's Articles of Incorporation, which is a right of first refusal and states that no shareholder shall ever sell, assign, transfer, or dispose of any of the capital stock of the corporation unless and until she has first offered, for a period of 30 days, her stock to the Board of Directors for the benefit of its shareholders who made desire to purchase the stock at book value.

On November 21, 2019, the court ruled on the parties' arguments, first finding that there was no contract between Shehee and Andrew and Margaret Shehee or Rose-Neath. The court held that the original offer made by Shehee was to the company at fair market value and that she did not offer the sale of the stock to the Board of Directors. Thus, Article 12 was not invoked, and no offer was made to the Board at book value. The court further held that the issue of whether Shehee may sell her stock to the corporation at fair market value or must first offer the stock to the Board at book value was not before the court, and it specifically made no ruling regarding that issue.

4

The court further held that any records granted to Shehee must be kept confidential. The court noted that Rose-Neath desired specific penalties to be put into place in the event of a breach of confidentiality but held that the court's right to hold her in contempt would suffice. Finally, the court held that Shehee was a shareholder and that her purpose in requesting the documents was to determine the value of her shares, implicitly finding that she was in good faith and had a proper purpose. After arguments from counsel, the court decided to hear expert witnesses on the matter of whether the requested documents were directly connected to the shareholder's purpose.

At a February 13, 2020 hearing, the court took testimony from Garland and two experts for Rose-Neath, Ben Woods ("Woods") and William Frazier ("Frazier"). Garland testified that 16 of the above 17 categories of documents are directly related to his appraisal of Rose-Neath, admitting that he would not need the monthly bank statements. Garland testified that he used a list generated by a renowned expert in business valuation to create his list of categories of documents. Garland further testified that, as a business valuator, it is always better to have more information than less because until he examines the records, he will not know whether they are material to the business valuation or not. When questioned by Rose-Neath's counsel, Garland testified that he had not been asked to determine whether personal expenses had been charged to the company and stated that he had never met or spoken to Shehee. He repeatedly testified that he was hired to perform a business valuation on

Shehee's shares of Rose-Neath and the documents he requested are directly related to that purpose.

Woods testified that he would unconditionally provide access to four of the categories of documents: (4) Rose-Neath's tax returns from the past five years, (6) any audits from the past five years, (10) any appraisals of immovable property, and (17) all minutes of Rose-Neath board meetings and shareholder meetings. Woods further stated that, in the absence of audited financial statements, he would also agree that nine other categories of documents should be produced.[2] Woods testified that four categories of documents would not be necessary because the data would be included in audited financial statements, including (1) monthly balance sheets from the past five years, (2) monthly profit and loss statements from the past five years, (3) Rose-Neath's bank statements from the past five years, and (5) Rose-Neath's general ledger from the past five years. However, Woods testified that he has used the general ledger to perform an evaluation of a company when there are unaudited financials. Under questioning, Woods testified that if he did not have audited financial documents, he would need a majority of the categories of documents requested by Shehee in order to produce a proper business valuation.

---

[2] Those categories of documents include: (7) any contracts and/or obligations pending between Rose-Neath and any third parties, (8) any pending lawsuits and/or claims between Rose-Neath and any third parties, (9) all company credit card statements from the last five years for cards which were issued to any and all officers and directors of Rose-Neath, (10) any appraisals of property owned by Rose-Neath, (11) any debts and obligations owed on property owned by Rose-Neath, (12) any and all leases and subleases of the real estate formerly occupied by Reeves Marine, (13) any and all contracts with A&M Shehee Interest, Inc., (14) any and all leases, management agreements, consulting agreements, and any other contracts with any entity, which is owned (in whole or in part) by any shareholder of Rose-Neath, (15) any contracts, purchase orders, and invoices to or from Travis Grisham, and (16) any contracts, purchase agreements, and invoices to or from Charter Brokerage.

Frazier also agreed that some of the documents requested by Shehee were appropriate for an appraisal, including (4) tax returns for the past five years, (6) any audits for the past five years, (11) any debts and obligations owed on real or immovable property owned by Rose-Neath, and (17) all minutes from Rose-Neath's board meetings over the past five years. Frazier testified that he would not have requested many of the categories of documents. He testified that his process is to requested a smaller number of documents because much of the information is contained in audited financials. He testified that he has never requested a general ledger. He and Woods both testified that after examining the documents they had originally requested, they would request further documentation from the company if they found that they needed further information.

After reviewing the testimony and evidence, on August 25, 2020, the trial court ruled that Rose-Neath must produce 16 categories of documents, removing the monthly bank statements from the list of documents to be produced. The court, in a detailed ruling, listed each category of documents requested by Shehee and described the testimony elicited from each expert regarding that category. The court noted that Rose-Neath's experts testified that many of the categories of documents to which they objected would in fact be necessary if the company did not have audited financial records. The court confirmed with Rose-Neath's counsel that the company did not have five years of audited financial records before ruling that Rose-Neath must produce all of the requested documents, except the monthly bank statements, to Shehee.

The court also confirmed that despite Rose-Neath's own experts testifying that several categories of documents would be necessary for a business valuation, Rose-Neath had not provided any documents to Shehee, except the minutes from the last five years of board meetings. Considering this, the trial court found that Rose-Neath was not in good faith and, pursuant to La. R.S. 12:1-1604, ordered the company to pay Shehee's attorney's fees and costs, including expert witness fees in connection with the hearing. This appeal followed.

## STANDARD OF REVIEW

The parties disagree as to the standard of review appropriate in this case. Rose-Neath urges this court to examine the matter under a *de novo* standard of review, citing *Lawrence v. Terral Seed, Inc.*, 35,019 (La. App. 2 Cir. 9/26/01), 796 So. 2d 115, *writ denied*, 01-3134 (La. 2/1/02), 808 So. 2d 341. *Lawrence*, *supra*, involves the interpretation of a contract, meaning the preliminary inquiry into whether the contract is ambiguous is a question of law. Shehee asserts that the appropriate standard of review is manifest error, and we agree.

A district court's findings of fact in a mandamus proceeding are subject to a manifest error standard of review. *Town of Sterlington v. Greater Ouachita Water Co.*, 52,482 (La. App. 2 Cir. 4/10/19), 268 So. 3d 1257, *writ denied* 19-0913 (La. 9/24/19), 279 So. 3d 386. An appellate court may not set aside a trial court's findings of fact in absence of manifest error or unless it is clearly wrong. *Bernard v. Louisiana Testing & Inspection, Inc.*, 19-575 (La. App. 3 Cir. 2/5/20), 290 So. 3d 239, *citing Rosell v. ESCO*, 549 So. 2d 840 (La. 1989). Where there is a conflict in testimony,

8

reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed on review, even if the appellate court feels that its own evaluations and inferences are as reasonable. *Stobart v. State, Through Dept. of Transp. & Dev.*, 617 So. 2d 880 (La. 1993); *Wells v. Town of Delhi*, 53,607 (La. App. 2 Cir. 3/3/21), 316 So. 3d 1257. The appellate court may not reverse simply because it is convinced that, had it been sitting as trier of fact, it would have ruled differently. If there are two permissible views of the evidence, the factfinder's choice between them can virtually never be manifestly erroneous or clearly wrong. *Lewis v. State, Through Dept. of Trans. & Dev.*, 94-2370 (La. 4/21/95), 654 So. 2d 311.

## ASSIGNMENTS OF ERROR

Appellant, Rose-Neath, asserts eight assignments of error, primarily focused on the trial court's ruling on the breadth, width, and scope of the documents ordered disclosed by the trial court, as well as Shehee's motive when requesting the documents. We will address each of the assignments of error individually below.

## DISCUSSION

This yet another sad situation of disputes between siblings that arise when control of a family business changes hands from generation to the next. Such intrafamily struggles and contention become so volatile that relations are strained or broken and attorneys are brought in to litigate family disputes, was likely the impetus for the coining of the phrase "turning over in their grave" regarding deceased parents relative to unseemly disputes between their children.

9

A shareholder's financial interest in a corporation is at the core of the right to inspect the books and records of the corporation. The crux of this proceeding is the parties' ongoing disagreement over whether Shehee's right to view the documents and the content of her demand satisfies the provisions of La. R.S. 12:1-1602, which states that a shareholder of a corporation is entitled to inspect and copy any of the records of the corporation as long as the shareholder: (1) owns at least five percent of any class of the issued shares, (2) gives the corporation a signed written notice of demand at least five days prior to the inspection, and (3) satisfies the requirements set forth in subsection (D) of the statute. La. R.S. 12:1-1602(C). Subsection D of the statute provides:

> A shareholder may inspect and copy the records described in Subsection C of this Section only if the following conditions are satisfied:
>
> (1) The shareholder's demand is made in good faith and for a proper purpose.
>
> (2) The shareholder describes with reasonable particularity the shareholder's purpose and the records the shareholder desires to inspect.
>
> (3) The records are directly connected with the shareholder's purpose.

La. R.S. 12:1-1602(D).

It is undisputed that Shehee owns more than five percent of Rose-Neath and that she provided timely written demand to view corporate records.

**Assignment of Error Number 1:** **Whether or not plaintiff has the burden of proof regarding each of the statutory requirements [mandated by La. R.S. 12:1-1602(C)] described in La. R.S. 12:1-1602(D)(1), (2), and (3).**

Rose-Neath asserts that Shehee has the burden of proving each element of La. R.S. 12:1-1602(D). Rose-Neath contends that the trial court correctly stated the statute but argues that it failed to make a finding of fact regarding whether Shehee had satisfied her burden.

Generally, plaintiffs have the burden of proving the elements of their case by a preponderance of the evidence. *Bernard*, *supra*. The plain language of La. R.S. 12:1-1602(D) states that shareholders will have the right to inspect and copy records *only if* they satisfy the three conditions set forth therein. Shehee, as shareholder, was required to satisfy the above three conditions before she would be given access to the requested documents.

Although the trial court may not have explicitly stated that Shehee satisfied her burden of proof, a review of the record reveals that the court was familiar with the statutory language of La. R.S. 12:1-1602, stated it on the record, and then applied the facts presented at various hearings to that standard. Even implicit findings of fact fall under the manifestly wrong standard of review. *Virgil v. Am. Guar. & Liab. Ins. Co.*, 507 So. 2d 825, 826 (La. 1987); *Port City Glass & Paint, Inc. v. Simmie Brooks*, 52,534 (La. App. 2 Cir. 2/27/19), 266 So. 3d 516. We cannot find that the trial court was manifestly erroneous in its determination that Shehee satisfied her burden of proof. This assignment of error is without merit.

**Assignment of Error Number 2:** **Whether or not the "value" of the shares referenced in the demand letter means or includes the "oppressed shareholder" valuation standard of La. R.S. 12:1-1435 and, if so, whether or not such standard requires an investigation to determine whether personal expenses were paid.**

Rose-Neath argues that because Shehee was not an oppressed shareholder on the date of her demand letter, the value of her shares cannot

11

be determined utilizing the oppressed shareholder standard contained in La. R.S. 12:1-1435(C).[3] Rose-Neath argues that Shehee's status as an oppressed shareholder determines the value of her shares, *i.e.* whether they are valued under a *fair value* or *fair market value* standard. Rose-Neath further argues that because Shehee is not an oppressed shareholder, none of the records demanded by her expert that relate solely to that standard are directly connected to the shareholder's purpose.

In her brief and in oral argument on this matter, Shehee does not claim to be an oppressed shareholder. She instead argues that it is irrelevant to this mandamus act if she is an oppressed shareholder or not. She is asserting her right as a shareholder to inspect and copy corporate records, and the determination of the type of value that will eventually be placed on her shares is wholly irrelevant.

A review of the record indicates that while there was discussion at the trial court about the differences between a *fair value* and *fair market value* standard, Garland maintained that the categories of documents he requested were necessary to the purpose of valuing Shehee's shares. The issue before the trial court and, thus, this appeal, is whether Shehee has a right to inspect and copy corporate documents pursuant to La. R.S. 12:1602. The trial court judge was very clear that the scope of his ruling was limited to whether Shehee had a right to inspect and copy corporate records as a current

---

[3] La. R.S. 12:1-1435(C) states (1) The term "fair value" has the same meaning in this Section and in R.S. 12:1-1436 as it does in R.S. 12:1-1301(4) concerning appraisal rights, except that the value of a withdrawing shareholder's shares is to be determined as of the effective date of the notice of withdrawal pursuant to Subsection D of this Section. (2) The context of the transaction requiring appraisal, as described in R.S. 12:1-1301(4), is a sale of the entire corporation in an arm's-length transaction by a person who owns all of the shares in the corporation.

shareholder.  As Shehee notes in her brief, her shares are not currently being offered for sale and she has not been able to even begin the process of valuing her shares because she does not have the appropriate corporate records.  As such, we find the issue of whether or not the "value" of the shares referenced in the demand letter means or includes the "oppressed shareholder" valuation standard of La. R.S. 12:1-1435 is not an issue not before this court.  Insofar as this assignment of error is related to whether the corporate records are related to Shehee's purpose, that issue is discussed under the sixth assignment of error.  This assignment of error is without merit.

**Assignment of Error Number 3:      Whether or not plaintiff described (a) her alleged purpose and (b) the records she desires to inspect with "reasonable particularity" within La. R.S. 12:1-1602(D)(2).**

Rose-Neath argues that Garland's testimony at trial established that Shehee's demand failed to describe her purpose in evaluating her shares of stock with reasonable particularity, and because of this lack of particularity, Garland requested a broad range of documents so he could perform his appraisal.  Rose-Neath again argues that the determination of whether a *fair market value* or *fair value* appraisal is being conducted requires different records to evaluate and, without support, argues that such a determination must happen before the records are provided to the shareholder.

Shehee's demand letter stated that her purpose in examining the company's records was "to fully and completely evaluate the value of Ms. Shehee's shares of Rose-Neath stock."  Rose-Neath urges us to believe that this stated purpose is vague and undefined.

The trial court examined the parties briefs on this matter and heard extensive expert witness testimony on the appropriate documents for Shehee's stated purpose. Shehee's expert provided a list of the categories of documents he needed to inspect and testified at length about those categories of documents. As a shareholder, Shehee is entitled to know the value of the corporation in which she maintains an ownership interest. We cannot find that the trial court was manifestly erroneous in its determination that Shehee satisfied the requirements of La. R.S. 12:1-1602(D)(2). This assignment of error is without merit.

**Assignment of Error Number 4:     Whether or not plaintiff's demand is made "in good faith" and "for a proper purpose" within La. R.S 12:1602(D)(1).**

Rose-Neath argues that Shehee is not in good faith because her demand includes documents that it claims are not directly connected with the shareholder's purpose. Rose-Neath further argues that Shehee's demand was not made for a proper purpose. It alleges that her true purpose is not to value her shares but, rather, is a fishing expedition to find information regarding her siblings' personal expenses allegedly being improperly paid by Rose-Neath's funds.

As to good faith, the burden of proving that a shareholder possessed ill motive is on the corporation seeking to deny the shareholder's right to inspect the records. *Ales v. Sewell*, 00-2017 (La. App. 4 Cir. 10/17/01), 800 So. 2d 36. The corporation has the burden of proving any statutory defense, such as the shareholder's status as a business competitor, or the confidentiality of the requested documents. *Id.* Rose-Neath has failed to

establish a shareholder's inquiry in to the financial condition of the company was not made in good faith.

Regarding proper purpose, Shehee's asserted purpose is to determine the value of the corporation so that she can determine the value of her individual ownership interest. The Louisiana Business Corporation Act ("LBCA") does not define "proper purpose." The Model Business Corporation Act ("MBCA"), which Rose-Neath urges this court to consider, suggests broadly that a proper purpose is "a purpose that is reasonably relevant to the demanding shareholder's interest as a shareholder." Mod. Bus. Corp. Act § 16.02 Official Comment 3 (2011).

Although not statutorily defined, Louisiana jurisprudence has found that a shareholder has a proper purpose when he wants to ascertain the value of his shares. *Naquin v. Air Engineered Sys. & Serv., Inc.*, 423 So. 2d 713 (La. App. 3 Cir. 1983); *Feil v. Greater Lakeside Corp.*, 09-441 (La. App. 5 Cir. 1/2610), 31 So. 3d 520.[4] Other proper purposes include seeking reasons for declining profits or to discover mismanagement or conflicts of interest. *Feil*, *supra*. In *Feil*, *supra*, the court found that "the right to inspect should extend to all relevant records necessary to inform the shareholder about corporate matters in which he has a valid interest." The court found that the scope of the shareholder's inspection right under the statute is wide-reaching. However, the trial court can limit requests for indiscriminate or

---

[4] Rose-Neath urges this court to discount the above jurisprudence because it was decided under a prior version of the statute, which required that a shareholder have a "proper and reasonable purpose" for examining the corporation's records. We do not find this argument persuasive. The requirement that a shareholder have a "proper purpose" and a "proper and reasonable purpose" are not so different as to leave all case law that has cited the predecessor statute as irrelevant to the current issue.

blanket inspection of documents that it considers to be "fishing expeditions." *Id.*

Shehee asserted in her demand letter and has continued to assert throughout this litigation that the records she is seeking are relevant and crucial to her ability to determine the value of her shares of Rose-Neath. Garland repeatedly testified that he prepared the list of documents requested and that he was hired to value Shehee's shares in Rose-Neath. He explicitly denied that he was asked to conduct a forensic accounting or to search specifically for personal expenditures charged by Shehee's siblings to the company. Garland testified that he based his requested documents on a seminal business valuating text created by a pioneer in the field and provided a copy of that text to the trial court. Garland further testified that he had not discussed with Shehee or anyone on her behalf any other motive or purpose for his appraisal.

The documents and records requested by Shehee all fall under the umbrella of information pertinent to establishing the financial condition and, therefore, the value of Rose Neath. There is ample evidence in the record that Shehee satisfied her burden of proving that she was in good faith and that she had a proper purpose in seeking the requested documents. There is no manifest error in the trial court finding that Shehee was in good faith and with a proper purpose, and this assignment of error lacks merit.

**Assignment of Error Number 5: Whether or not (a) the right of first refusal provided in Article XII of defendant's Articles of Incorporation places a ceiling on the value of plaintiff's shares and (b) the trial judge erred in excluding relevant evidence.**

Rose-Neath's next argument contends that because of the date of Shehee's demand letter, she was legally obligated under Rose-Neath's

16

Articles of Incorporation to sell her share to other shareholders at *book value*. As discussed above, Article XII of Rose-Neath's Articles of Incorporation is a right of first refusal, which states that no shareholder shall ever sell, assign, transfer, or dispose of any of the capital stock of the corporation unless and until she has first offered, for a period of 30 days, his stock to the Board of Directors for the benefit of its shareholders who made desire to purchase the stock at book value. Rose-Neath argues that because Shehee's shares of stock are subject to the Article XII first right of refusal, Shehee could not possibly have a valid interest in determining the value of her shares and, thus, has no proper purpose for seeking the corporate documents. We find this argument unpersuasive.

As a preliminary matter, Article XII of Rose-Neath's articles of incorporation does not establish the value of the corporation or a shareholder's ownership interest. Instead, it merely provides a formula to set a potential purchase price by which a specific identified class of potential purchasers may purchase the shares in the corporation. The right of first refusal is not an obligation to purchase. There is no requirement the right of first refusal must be exercised. If not exercised, Shehee would be free to sell her shares based on fair market value.

As noted in the second assignment of error, whether Shehee ever sells her shares, the value that she will later seek for her shares, and to whom she sells those shares is not currently at issue before this court. The trial court specifically found that "whether Nell may sell her stock to the corporation at fair market value or must first offer the stock to the Board is an issue that is currently not before the Court at this time." We agree. The matter before us

17

is whether an undisputed 25% shareholder of a company has a right to inspect and copy records of the corporation. The trial court found that the issue of whether Rose-Neath's Articles of Incorporation will be applicable to any future sale of Shehee's stock is not relevant to this proceeding. A shareholder is entitled to review those documents generally accepted to be relevant to determining the financial condition and value of the corporation, notwithstanding any right of first refusal which includes share price valuation formula. We find no manifest error in the holding of the trial court, and accordingly, this assignment of error is without merit.

**Assignment of Error Number 6:** **Whether or not the records demanded by plaintiff are "directly connected with the shareholder's purpose" within La. R.S. 12:1-1602(D)(3).**

Rose-Neath contends that the district court imposed the burden of proof on it to show that the records requested by Shehee were not directly connected to valuing her shares. Additionally, Rose-Neath asserts that the trial court erred in determining that 16 of the 17 categories requested by Shehee were necessary due to Rose-Neath not having consecutive audited financial statements covering 2014 to 2018.

A review of the record reveals that the trial court was familiar with the applicable statutes and jurisprudence and took witness testimony from both parties regarding whether the 17 categories of documents were directly connected with Shehee's purpose of valuing her shares. In a lengthy ruling, the trial court examined each of the 17 categories of documents, in turn, discussing each expert's testimony about whether that category was directly related to valuing shares or under what circumstances it could be necessary to the value her shares. The three experts' testimony varied in the categories

18

of documents that they each felt would be necessary for a business valuation. The trial court noted that all three experts agreed that if there were no audited financial statements for a year, the business valuator would need additional documents to replicate the information that would be contained in an audited statement.

Where there is conflicting testimony between witnesses and experts, it is the duty of the trial court to make credibility determinations. *Martin v. E. Jefferson Gen. Hosp.*, 582 So. 2d 1272 (La. 1991); *Wells*, *supra*. Credibility determinations made by the trial court are not to be disturbed unless manifestly erroneous or clearly wrong. *Wells*, *supra*. We cannot say that the trial court erred in its determinations regarding the conflicting expert witness testimony and holding that Shehee was entitled to 16 of the 17 requested categories of documents. This assignment of error is without merit.

**Assignment of Error Number 7: Whether or not defendant "refused inspection in good faith because it had a reasonable basis for doubt about the right of the shareholder to inspect the records demanded" within La. R.S. 12:1-1604(C).**

Rose-Neath argues that the trial court erred in finding that it was not in good faith in refusing to provide the documents requested by Shehee and awarding her attorney's fees and costs, including expert witness fees. Again, this court is bound to determine whether the trial court was manifestly erroneous and not to conclude whether we would have reached a different conclusion.

The record is clear that Shehee made her initial demand for documents on May 16, 2018. After Rose-Neath's refusal to provide her with the requested documents, she filed this mandamus action. The trial court

ruled on November 21, 2019 that Shehee had a right to inspect the requested records, implicitly finding that she was in good faith and had a proper purpose. After argument by counsel, the court agreed to hear expert witness testimony regarding whether each category of document requested was directly connected with her stated purpose of valuing her stock.

At the February 13, 2020 hearing, Rose-Neath's experts both testified that Rose-Neath's tax returns from the past five years, any audits from the past five years, and all minutes of the board meetings and shareholder meetings should be produced, as they are directly connected to valuing shares. Both experts also testified that they would need additional documents if there were no audited financial statements. It is undisputed that Rose-Neath does not have five consecutive years of audited financials.

At the August 25, 2020 hearing, Rose-Neath's counsel informed the trial court that Rose-Neath had only provided Shehee with the minutes from the board meetings and had not provided her with any other documents, even though its own experts agreed that some of the categories of documents would be necessary for a valuation of her shares. Apparently, the decision to deliver to Shehee the documents that were undisputedly appropriate somehow fell victim to the ongoing dispute regarding other requested documents. We cannot say there was manifest error in the trial court's finding that Rose-Neath was not in good faith when it refused to provide any documents, save the minutes, to Shehee. This assignment of error is without merit.

**Assignment of Error Number 8:      Whether or not the trial judge abused his discretion in refusing to issue an appropriate Protective Order under La. R.S. 12:1-1604(D) (a) prohibiting plaintiff from**

20

**making unauthorized disclosures of confidential information and (b) imposing reasonable restrictions on the use and distribution thereof.**

Rose-Neath argues that the trial court abused its discretion in refusing to issue an appropriate protective order under La. R.S. 12:1-1604(D). At the November 21, 2019 hearing, the trial court ruled the following:

> Additionally, Nell is hereby granted the right to inspect the requested records outlined in her petition, however, these records must be kept confidential. If, of course, and I know there is some concern as past dealings, if they are not kept confidential, you do have a right to file a rule for contempt on behalf of your clients. I'm not going to state what she would face if they're not kept confidential at this time, but if she does not keep them confidential and we're back here before the Court again, she will be held in contempt.

La. R.S. 12:1-1604(D) states "if the court orders inspection and copying of the records demanded, it may impose reasonable restrictions on the use or distribution of the records by the demanding shareholder." La. R.S. 12:1-1604(D) allows a court to impose restrictions on the use or distribution of records by a demanding shareholder, but it does not mandate that a court impose those restrictions.

Although not mandated to do so, the trial court imposed a confidentiality order on Shehee, and the breach of that order could result in contempt. This assignment of error is likewise without merit.

## CONCLUSION

For the foregoing reasons, we affirm the trial court's ruling and tax costs of the appeal to the defendant, Kilpatrick's Rose-Neath Funeral Homes, Crematorium and Cemeteries, Inc.

**AFFIRMED.**